Dick I. TAYLOR and Robert
J. Taylor, Plaintiffs

v.

CHIEF OF POLICE PHILLIP KEITH, in his individual capacity, and Deputy Police Chief James Robert Coker, in his individual capacity, Captain Dan Davis, in his individual capacity, and Sergeant Gordon Catlett, Sr., in his individual capacity, Defendants

No. 3:99–CV–057.

United States District Court,
E.D. Tennessee,
Northern Division.

Aug. 30, 2001.

**940**

Wanda G Sobieski, Sobieski, Messer & Associates, Robert R Carl, II, Baker, Donelson, Bearman & Caldwell, Knoxville, for Dick I Taylor, Robert J Taylor plaintiffs.

Timothy F Zitzman, Bass, Berry and Sims, John A Lucas, Nash E Long, III, James S Chase, Hunton & Williams, Knoxville, for Phil Keith, in his individual capacity, Phil Keith, in his official capacity, James R Coker, Deputy Police Chief in his individual capacity, James R Coker, in his official capacity, Dan Davis, in his individual capacity, Dan Davis, in his official capacity, Gordon Catlett, Sr, in his individual capacity, Gordon Catlett, Sr, in his official capacity, Knoxville, City of, defendants.

### MEMORANDUM OPINION

JARVIS, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by two officers of the Knoxville Police Department. Plaintiffs Dick I. Taylor and Robert J. Taylor, who are father and son, claim that the defendants violated their procedural and substantive due process rights by terminating them and later retaliating against them after their reinstatement, for exercising their right to freedom of speech under the First Amendment. The plaintiffs' procedural due process claim was previously dismissed. Currently pending is the defendants' motion for summary judgment on the remaining claim that defendants violated plaintiffs' substantive due process rights by retaliating against them for exercising their rights under the First Amendment. Because the plaintiffs have failed to sufficiently allege that they spoke out on a matter of public concern, defendants' motion for summary judgment [Court File # 73] will be granted and this action dismissed.

Sergeant Dick I. Taylor and his son, Officer Robert J. Taylor, were terminated

by the Knoxville Police Department on February 2, 1998. Both Taylors appealed their dismissal and, after hearing proof for a number of days, an administrative hearing officer overturned their terminations and found that they were entitled to reinstatement and back pay. The administrative hearing officer set out in detail facts which are sufficient to resolve the pending motion. In relevant part, the hearing officer found as follows:

Shortly before noon on December 14, 1997, Officers Robert Taylor and Toby Wells proceeded to Cosby Avenue, located within the West Sector, to serve a domestic violence warrant on a Mr. Jack Longmire which had been taken out by his wife, Kelli Longmire. When confronted in the parking lot by these officers, Longmire refused arrest, struggling with both officers. In the course of the struggle, Longmire grabbed at the gun of Officer Taylor, causing Officer Taylor to hit his emergency call button for assistance. After a vigorous physical struggle in which capstun was used to subdue Mr. Longmire, these officers ultimately succeeded in placing Mr. Longmire in handcuffs behind his back and seating him on the parking lot in the immediate vicinity of Kelli Longmire's and Officer Taylor's vehicles, which were parked side by side. Subsequent thereto, Officer John Szczepanowski arrived on the scene, at which time Officers Taylor and Wells left Longmire in Officer Szczepanowski's custody and proceeded to Officer Wells['] police car which was parked a distance of some 40 to 60 feet away up the sloped parking lot. Officers Taylor and Wells went to the car for the express purpose of washing capstun overspray from Officer Taylor's eyes and hands which he had received in his struggle with Longmire and from which he was suffering the physically discomforting side effects typically associated with the same; namely,

blurred, teary, burning eyes and skin. While at Officer Wells['] car, both Officers Taylor and Wells heard a commotion in the vicinity of the prisoner and upon returning found Longmire lying face down with blood flowing from the right side of his head.

There is no dispute that Sergeant Taylor was the first supervisory officer on the site in response to Officer Taylor's emergency call, but within a matter of minutes of his arrival Sergeant Roger White also arrived on the scene. Although assigned to the Central Sector, Sergeant Taylor responded to the emergency call because he was monitoring the police radio as a favor for Sergeant White who was the West Sector supervisor on duty at the time of the arrest, but due to a conflicting church commitment had arranged for Sergeant Taylor to cover his calls during his absence. . . .

Sergeant Taylor upon arriving at the scene discovered Longmire's bloody face and was briefly advised by Officer Taylor that Longmire had resisted arrest struggling with the officers. Sergeant Taylor immediately proceeded to render medical aid to Longmire by cleaning and treating his head wound at the rear of the police wagon to which Longmire had been removed. In doing so, Sergeant Taylor instructed an off-duty officer, Ryan Flores, who apparently lived at the same apartment complex and who had appeared on the scene to wash Longmire's blood from the asphalt. Sergeant Taylor briefed Sergeant White upon his arrival at the scene and both sergeants questioned Kelli Longmire who had been present and witnessed portions if not all of the arrest. Upon expressing concerns about the beating her husband had received, she was specifically advised by both sergeants about procedures for filing an abuse complaint with Internal Affairs as was her hus-

band, Jack Longmire, when he was interviewed at the hospital by both Sergeants.

Prior to leaving the scene, Officer Robert Taylor confiscated various items from the Longmires' apartment, including a camera, telephone and guns for which he ultimately filled out a confiscation report. At the scene he filled out an arrest report and later that afternoon completed a resisting arrest warrant for Longmire after being treated at the hospital for a sprained wrist he had injured in his struggle with Longmire. The next day on December 15 Robert Taylor filled out a handwritten Use of Force Report which he turned in late afternoon at the end of his shift to Sergeant White. On December 16, 1997, Robert Taylor prepared a typewritten Use of Force Report upon the instruction of Captain Dan Davis after being advised that his handwritten report was difficult to read. When the second type-written report was rejected due to spacing concerns, Officer Taylor prepared yet a third Use of Force Report by computer also on December 16. In all three Use of Force Report [sic] Officer Taylor consistently notes that he can't advise about Longmire's head injury because when he and Officer Wells left Longmire in Szczepanowski's custody, Longmire was not bleeding.

Upon review of Officer Taylor's Use of Force Report, Chief Keith instructed Sergeant Catlett of Internal Affairs to investigate the matter. On December 16, Sergeant Rick Lyon of Internal Affairs contacted Jack Longmire by telephone who declined to give a statement, whereupon the investigation was closed. Captain Dan Davis, upon his review of Officer Taylor's Use of Force Report, felt that there may be a problem with Officer Szczepanowski and on December 16 instructed Lieutenant Sasscer to investigate the report. Lieutenant Sasscer came in on the afternoon of December 17, 1997, to talk to Officer Szczepanowski, but at that time Szczepanowski was on medical leave due to injuries he sustained in connection with his arrest of teenager Michael Bart earlier that same day wherein he had broken the teen's leg. Lieutenant Sasscer made no effort to follow through with any investigation until Officer Szczepanowski returned to work in early January, which by that time Lieutenant Sasscer understood Internal Affairs was investigating the matter.

Sergeant White upon his review of Officer Taylor's Use of Force Report also felt there might be a problem with Officer Szczepanowski and upon forwarding the Use of Force Report to Internal Affairs attached to the report a handwritten note indicating that because of the statements in the Use of Force Report he had left instructions for Officer Szczepanowski to complete a statement and turn it in ASAP. In concluding his note, Sergeant White noted that he had been filling in for a vacationing Sergeant Fox and that he himself would now be off until December 19. Internal Affairs did not re-open its investigation until after Sergeant Dick Taylor on January 8, 1998, expressed concerns regarding Officer John Szczepanowski to his supervisor, Lieutenant Gordon Catlett, Jr., who in turn reported the matter to his father, Sergeant Gordon Catlett, Sr., as head of Internal Affairs.

There is no dispute whatsoever that the original Internal Affairs inquiry (Case # 97–2142) was initiated in response to Officer Robert Taylor's Use of Force Report and was subsequently re-opened (Case # 98–2147) in response to Sergeant Dick Taylor's complaints about Szczepanowski. However, after a series of interviews by Internal Affairs commencing on or about January 12, 1998,

of the officers responding to the Longmire arrest scene, Sergeant Dick Taylor and Officer Robert Taylor were terminated by Chief Keith at the recommendation of Captain Dan Davis and Deputy Chief Robert Coker with the support of Sergeant Gordon Catlett based on the Internal Affairs investigative file.

The plaintiffs allege that they were terminated and later retaliated against following their reinstatement for exercising their First Amendment rights in speaking out against Officer Szczepanowski with regard to the Longmire beating. Defendants deny any retaliation against the Taylors because of their speech and in fact deny that the Taylors engaged in any protected speech. Because I agree with the defendants that the plaintiffs did not engage in any protected speech, this issue is dispositive of this case and the court does not reach the other issues raised by the defendants.

■ A government employer may not "condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Retaliation against a government employee for exercising his First Amendment rights, thus, also violates the First Amendment. *See Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir.1994). "First Amendment protection extends to a public employee's speech when he speaks as a citizen on a matter of public concern, but does not extend to speech made in the course of acting as a public employee." *Thomson v. Scheid*, 977 F.2d 1017, 1021 (6th Cir.1992). Although it is not necessary that the speaker speak to the press, nor that he speak at a public meeting, he must show more than the fact that his job encompassed a matter of public concern. *Id.* at 1020. Internal office communication does not necessarily give rise to a constitutional claim. *Connick*, 461 U.S. at 147, 103 S.Ct.

1684. To determine whether an employee's speech addresses a matter of public concern, the court should evaluate the "content, form, and context of a given statement, as revealed by the whole record." *Id.* at 146, 103 S.Ct. 1684. "The threshold question is ... whether the employee's speech may be 'fairly characterized as a matter of public concern.'" *Dambrot v. Central Michigan University*, 55 F.3d 1177, 1186 (1995). Whether the speech in question is about a matter of public concern is a question of law. *Rahn v. Drake*, 31 F.3d 407, 411 (6th Cir.1994).

■ The court must first identify the alleged speech made by the plaintiffs. Officer Robert Taylor's speech is found only in the three Use of Force statements which he submitted to his superiors. These statements set out the facts as Officer Taylor recalled them from the night of the Longmire incident. In all three reports, Officer Taylor makes essentially the same statement which is that when he and Officer Wells left the handcuffed Longmire with Szczepanowski and went to wash off the capstun, Longmire was uninjured and when they returned Longmire was bleeding from a head injury.

The court concludes that Officer Robert Taylor's three reports do not constitute speaking out on a matter of public concern. The reports were completed by Officer Taylor as a part of his job in the course of acting as a public employee and consisted entirely of a factual report describing an event. It is simply a factual report of the type which police officers routinely complete. Taylor gave the reports to his superiors as required by his job. He did not make any report to the press or the public. In fact, his report does not directly accuse Szczepanowski of beating Longmire. Rather, it simply observes quite factually that when he and Officer Wells left, Longmire was uninjured, and when they re-

turned, Longmire was bleeding from a head injury. The reports contain no opinion that Szczepanowski used excessive force on Longmire or violated his constitutional rights. Considering the context, content and manner of the alleged speech, I do not find that Officer Robert Taylor's Use of Force Reports constitute speaking out on a matter of public concern.

 Sergeant Dick Taylor relies on one instance of allegedly protected speech which he made to Lieutenant Catlett after a January 7, 1998, roll call regarding the status of the Szczepanowski investigation. Sergeant Taylor testified with regard to the conversation which took place as follows:

> I said since you are a lieutenant, it may be a good idea for you to use your influence, if this boy does have a problem, to get him moved or to get him out of the area he was in. He was working a high crime area and the impression that I got was that he needed to be moved, and that's all I did.

Testimony of Sergeant Taylor at 918. The court also concludes that Sergeant Taylor's alleged protected speech does not constitute speaking out on a matter of public concern. His question regarding the Szczepanowski investigation remained an internal matter. Sergeant Taylor made no effort to speak to the press nor to have his views, whatever they were, regarding the Szczephanowski matter made public. Sergeant Taylor's suggestion that it might be a "good idea" to move Szczephanowski to another area simply constitutes speech made in the course of his employment as a public employee. Again, Sergeant Taylor made no statement of opinion that Szczepanowski used excessive force or violated Longmire's constitutional rights.

In light of the foregoing, the court concludes that neither plaintiff has demonstrated that they engaged in speech about a matter of public concern. Accordingly, all of the defendants are entitled to summary judgment on plaintiffs' claims under 42 U.S.C. § 1983.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that defendants' motion for summary judgment [Court File # 73] is GRANTED and this action is DISMISSED.