977 F.2d 1017
 James THOMSON, Plaintiff-Appellant,
v.
William P. SCHEID, Individually, and in his Official
Capacity as Erie County Commissioner; Erie County
Department of Human Services; Catherine R. DeWalt, in her
Official Capacity as Income Maintenance Administrator, Erie
County Department of Human Services, Defendants-Appellees.
 No. 91-4060.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 13, 1992.
Decided Oct. 19, 1992.
 
 Edward G. Kramer (argued and briefed), Kramer & Tobocman, Cleveland, Ohio, for plaintiff-appellant.
 James E. McGookey (argued and briefed), Lucal & McGookey, Sandusky, Ohio, for defendant-appellee William P. Scheid.
 Joan C. Szuberla (argued and briefed), Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, for defendants-appellees Erie County Dept. of Human Services and Catherine R. DeWalt.
 Terry Griffith, Prosecutor's Office, Sandusky, Ohio, for defendant-appellee Catherine R. DeWalt.
 Before: KENNEDY and JONES, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 Plaintiff James Thomson appeals the order of the District Court granting summary judgment in favor of defendants William P. Scheid, Catherine R. DeWalt, and Erie County Department of Human Services in this 42 U.S.C. § 1983 action. For the reasons to follow, we AFFIRM.
 
 I.
 
 2
 Plaintiff was hired by the Erie County Department of Human Services (the "Department") in January, 1987 as a fraud investigator. He was responsible for investigating suspected fraud by recipients of public funds in the programs administered by the Department. Shortly after he was hired, plaintiff was assigned to investigate Erie County Commissioner William Scheid because the Department had received an "Income Eligibility Verification System (IEVS) Match," which indicated that Scheid's elderly aunt had additional income which was not disclosed to the Department on her Medicaid application and redetermination forms. Scheid held power of attorney for his aunt and had filled out the forms. Plaintiff reviewed documents in the case file and interviewed Scheid. During the investigation, Scheid called Linda Van Tine, the Director of the Department, several times to complain about plaintiff. Plaintiff wrote a report which was forwarded to the Erie County prosecutor in June, 1987. A special prosecutor referred the case to a grand jury, which returned a "no bill." After the grand jury deliberations, plaintiff informed the Office of Inspector General, United States Department of Health and Human Services ("OIG") of his investigation of Scheid. OIG Agent George Debrovic, who had been working with the Department on a joint federal and county task force, investigated the Scheid case. Plaintiff also contacted the Federal Bureau of Investigation ("FBI"). Plaintiff wanted to personally file charges against Scheid, but Catherine DeWalt, plaintiff's supervisor, and Van Tine reminded plaintiff that he was bound by Department confidentiality rules and warned him not to act without following Department policies and procedures. No charges against Scheid were brought by the United States Attorney and plaintiff did not file a complaint.
 
 
 3
 After the Scheid investigation ended, plaintiff and Van Tine had discussions about a new supervisory position that might be created within the Department for which Van Tine thought plaintiff was qualified. Van Tine had exclusive responsibility for determining the job classification of a new supervisory position. The position as discussed would have required shifting of organizational structure and would have involved two different sources of funding within the Department. When the position was eventually created, Van Tine did not write the job description as she had originally discussed with plaintiff. The job description, as written, conformed to a state defined position, required for state approval. Although plaintiff met all the requirements of the position, he did not apply when it was posted. Van Tine now claims that she wrote the job description differently because Scheid told her that he would not permit plaintiff to be promoted.
 
 
 4
 Plaintiff resigned from the Department on October 6, 1989, because he felt that his work conditions had so deteriorated that he had no alternative. Plaintiff claims that a written reprimand issued by DeWalt undermined his power to conduct his investigations and his ability to adequately perform his job. He accepted a position with the State of Ohio in Columbus at a higher rate of pay, although he had to be away from his family from Monday to Thursday.
 
 
 5
 Plaintiff brought this action under 42 U.S.C. § 1983 against Scheid, individually and in his official capacity as a county commissioner, the Department, and DeWalt, in her official capacity as plaintiff's supervisor. Plaintiff alleged that he had been denied substantive due process and that he suffered retaliation for exercising his First Amendment rights. Plaintiff moved for partial summary judgment which was denied. Defendants DeWalt and the Department, together, and Scheid, separately, filed motions for summary judgment which were granted by the District Court.
 
 II.
 
 6
 We review a grant of summary judgment de novo, making all reasonable inferences in favor of the non-moving party. EEOC v. University of Detroit, 904 F.2d 331, 332 (6th Cir.1990). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Celotex v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 7
 Plaintiff argues that the District Court erred in finding that plaintiff had no entitlement to his job or to a promotion based on substantive due process. Substantive due process protects fundamental interests, not state-created contract rights. Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir.1990). Absent the infringement of a fundamental right, the termination of public employment does not constitute a denial of substantive due process. Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1351 (6th Cir.1992). Plaintiff's position as an investigator for the Department was created by state law. Therefore, even if plaintiff could show that he was constructively discharged because his work conditions were intolerable, his claim would not implicate substantive due process protections. Any interference with conditions or terms of employment is adequately redressed in a state breach of contract action. Charles, 910 F.2d at 1355. Plaintiff also argues that he was denied a promotion because Van Tine changed the job description on the newly created supervisory position because Scheid told her that plaintiff could not receive the promotion. Even if plaintiff's allegation is true, the right to a promotion is not a fundamental interest protected by substantive due process. Id. at 1353.
 
 
 8
 Plaintiff also claims that he was deprived of a liberty interest because defamatory statements were made against him. Defamatory statements were allegedly made by Scheid to Van Tine during plaintiff's investigation of Scheid, and by DeWalt following plaintiff's resignation to the man hired to replace plaintiff. Defamatory statements alone do not constitute a deprivation of liberty guaranteed by the Fourteenth Amendment. Paul v. Davis, 424 U.S. 693, 711-12, 96 S.Ct. 1155, 1165-66, 47 L.Ed.2d 405 (1976). Where a plaintiff alleges deprivation of liberty because he was defamed in the course of his employment, to be actionable under the Fourteenth Amendment the defamation must occur in the course of the termination of employment. Id. at 710, 96 S.Ct. at 1165 (citing Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Here, Scheid's purported statements were made during plaintiff's investigation, two years before plaintiff resigned, and DeWalt's statements were made after plaintiff resigned. It cannot be said that any defamatory statements affected the termination of plaintiff's employment.
 
 
 9
 Plaintiff argues that the defendants violated his procedural due process rights. However, plaintiff did not raise a procedural due process claim in the District Court, and this Court declines to hear arguments not initially presented in the District Court. Taft Broadcasting Co. v. United States, 929 F.2d 240, 243 (6th Cir.1991).
 
 
 10
 Plaintiff's final argument is that the District Court erred in finding that plaintiff's investigation did not constitute speaking out on an issue of public concern and did not warrant First Amendment protection. First Amendment protection extends to a public employee's speech when he speaks as a citizen on a matter of public concern, but does not extend to speech made in the course of acting as a public employee. Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Not all matters discussed within a government office are of public concern, and thus internal office communication does not necessarily give rise to a constitutional claim. Id. at 149, 103 S.Ct. at 1691. Here, plaintiff argues that the nature of his investigation, alleged fraud by a public official, was a matter of public concern because "[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law." Marohnic v. Walker, 800 F.2d 613, 616 (6th Cir.1986). He claims that his conversations with DeWalt and Van Tine about his investigation, what he felt was a "cover-up" by the grand jury, and his desire to pursue the Scheid case amounted to speaking out on matters of public concern. We find that plaintiff's conversations with DeWalt and Van Tine about the investigation, their reminder to plaintiff that his investigation was confidential, and their warning not to pursue the matter without going through appropriate Department procedures concern plaintiff's duties as an employee of the Department. Therefore, these conversations concern matters of internal department policy and cannot be considered speaking out on matters of public concern.
 
 
 11
 We further find that plaintiff's conversations with OIG Agent Debrovic do not amount to speaking out on matters of public concern. Plaintiff informed Van Tine that he intended to contact federal officials prior to his initial conversation with Agent Debrovic, and Van Tine authorized him to do so. DeWalt also was aware that he was contacting federal officials. Van Tine and DeWalt also knew that plaintiff gave the OIG a copy of his report on the Scheid investigation. Because plaintiff's contact with the OIG was approved by his supervisors, we believe that plaintiff was acting in the course of his employment in his conversations with the OIG. He therefore was not speaking out as a citizen with regard to his investigation, and his conversations with the OIG are not protected by the First Amendment. Because plaintiff did not speak out on a matter of public concern, his statements are not protected by the First Amendment, and we need not review his decision to resign to determine whether he was retaliated against.
 
 
 12
 Plaintiff also contacted the FBI, who told him that they could not become involved without a request from the county prosecutor. Plaintiff's supervisors were not aware that he had contacted the FBI. Plaintiff did not tell anyone that he had spoken with the FBI until his deposition was taken on January 3, 1991. Even if plaintiff's contact with the FBI could be considered speaking out as a citizen, he cannot claim that he was retaliated against for contacting the FBI because the defendants did not learn of this contact until after he had resigned.
 
 III.
 
 13
 We therefore conclude that defendants are entitled to summary judgment as a matter of law, and we AFFIRM the District Court.