*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0270P (6th Cir.)
File Name: 03a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DICK I. TAYLOR and ROBERT
J. TAYLOR,
　　*Plaintiffs-Appellants,*

　　　　*v.*

CHIEF OF POLICE PHILLIP
KEITH, in his individual and
official capacity; DEPUTY
POLICE CHIEF JAMES R.
COKER, in his individual and
official capacity; CAPTAIN
DAN DAVIS, in his individual
and official capacity;
SERGEANT GORDON CATLETT,
SR., in his individual and
official capacity,
　　*Defendants-Appellees.*

No. 01-6460

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 99-00057—James H. Jarvis, District Judge.

Argued: May 6, 2003

Decided and Filed: August 5, 2003

Before: KRUPANSKY, SILER, and GILMAN, Circuit
Judges.

───────────────

## COUNSEL

**ARGUED:** Wanda G. Sobieski, SOBIESKI, MESSER &
ASSOCIATES, Knoxville, Tennessee, for Appellants. John
A. Lucas, HUNTON & WILLIAMS, Knoxville, Tennessee,
for Appellees. **ON BRIEF:** Wanda G. Sobieski, Diane
Marie Messer, SOBIESKI, MESSER & ASSOCIATES,
Knoxville, Tennessee, for Appellants. John A. Lucas,
HUNTON & WILLIAMS, Knoxville, Tennessee, for
Appellees.

───────────────

## OPINION

───────────────

SILER, Circuit Judge. Plaintiffs, Sergeant Dick I. Taylor
and Officer Robert J. Taylor, brought a civil rights action
pursuant to 42 U.S.C. § 1983 against several City of
Knoxville supervisory police officers in their individual and
official capacities. The Taylors alleged that the defendants
retaliated against them for the exercise of their First
Amendment rights. The district court granted summary
judgment in favor of the defendants on the basis that the
Taylors did not engage in protected speech. For the reasons
that follow, we **REVERSE** the judgment of the district court
and **REMAND** for further proceedings.

## I. BACKGROUND

On December 14, 1997, police officers Robert Taylor and
Toby Wells attempted to serve an arrest warrant on Jack
Longmire. Longmire resisted arrest and, in the course of the

struggle, Officer Taylor called for emergency assistance and was accidentally sprayed with pepper spray. The officers eventually succeeded in placing Longmire in handcuffs and forcing him to the ground next to the squad car.

Shortly after Longmire was subdued, Officer John Szczepanowski arrived at the scene. Officers Taylor and Wells left Longmire in the custody of Szczepanowski while they went to flush the pepper spray out of Taylor's eyes. When they returned, the officers found Longmire lying face down with blood flowing from the right side of his head.

Officer Taylor's father, Sergeant Dick Taylor, who was covering for Sergeant Roger White, also responded to the emergency call. Upon arriving at the scene, Sergeant Taylor was informed that Longmire resisted arrest. He proceeded to treat Longmire's wounds and directed another officer to wash Longmire's blood from the asphalt. Sergeant Taylor briefed Sergeant White when he arrived, and the two questioned Mrs. Longmire about what she had witnessed during her husband's arrest. When Mrs. Longmire expressed concern about the beating her husband received, Sergeants Taylor and White explained that she could file an abuse complaint with Internal Affairs. Mr. Longmire was later advised about the procedure for filing a complaint.

The following day, Officer Taylor filled out the required Use of Force Report wherein he implicated Szczepanowski in the beating of Longmire. Taylor's report stated that he could not explain how Longmire's head injury occurred since Longmire was not bleeding when he was left in Szczepanowski's custody. Upon review of this report, Chief of Police Phillip Keith directed Sergeant Gordon Catlett, Sr. of Internal Affairs to investigate the matter. Internal Affairs contacted Longmire, who declined to give a statement, and the investigation was closed.

Captain Dan Davis and Sergeant White reviewed Officer Taylor's Use of Force Report. They felt that there may have

been a problem with Szczepanowski and decided to conduct their own investigation. Captain Davis instructed one of his lieutenants to investigate the report. Sergeant White informed Internal Affairs that he had left Szczepanowski written instructions to make a statement about the incident. Szczepanowski was not interviewed, however, because he was on medical leave due to injuries sustained in connection with an arrest made on December 17 wherein he broke the suspect's leg.

On January 8, 1998, after Sergeant Taylor saw Szczepanowski at roll call, he approached his supervisor, Lieutenant Gordon Catlett, Jr., to express concern about Szczepanowski's returning to active duty. Sergeant Taylor testified that he told Lieutenant Catlett:

> [S]ince you are a lieutenant, it may be a good idea for you to use your influence, if this boy does have a problem, to get him moved or to get him out of the area he was in. He was working in a high crime area and the impression that I got was that he needed to be moved. . . .

Sergeant Taylor's inquiry prompted Internal Affairs to reopen the investigation.

The Taylors cooperated with the Internal Affairs investigation and both implicated Szczepanowski in their formal statements. At the conclusion of the investigation, however, the Taylors were terminated by Chief Keith at the recommendation of Captain Davis, Deputy Chief Robert Coker, and Sergeant Catlett for allegedly covering up the Szczepanowski incident. The City alleged that Officer Taylor intentionally falsified information in Longmire's resisting-arrest warrant. The arrest warrant stated that Longmire's injuries occurred when he fell to the pavement while struggling with the officers, whereas the Use of Force Report indicated that Longmire's injuries occurred while in the custody of Szczepanowski. Moreover, Wells testified that Officer Taylor asked him whether he would cover for

Szczepanowski. As for Sergeant Taylor, the City alleged that he failed to take appropriate action regarding allegations of officer abuse and improperly processed evidence when he washed away Longmire's blood without calling criminalistics to process the scene.

The Taylors filed grievances regarding their terminations. After a hearing, the Administrative Hearing Officer found "overwhelming evidence" that the investigation was initiated as a result of the Use of Force Report prepared by Officer Taylor and renewed upon concerns expressed by Sergeant Taylor. This evidence, she concluded, was wholly inconsistent with the City's allegation that the Taylors attempted to cover up the Longmire incident. The Taylors were ordered reinstated with full back pay.

The defendants appealed to the Chancery Court for Knox County, which set aside the decision of the Hearing Officer and ordered reinstatement with an oral reprimand for Officer Taylor and reinstatement with a 30-day suspension for Sergeant Taylor. As a consequence, the Taylors appealed to the Tennessee Court of Appeals. The court of appeals reversed the chancery court judgment with respect to Sergeant Taylor, reinstating him with full back pay and no suspension. The court upheld the Chancellor's decision with respect to Officer Taylor.

The Taylors filed the instant lawsuit against the defendants in their individual and official capacities. The complaint alleged that the defendants retaliated against them for the exercise of their First Amendment Rights. Specifically, the Taylors claimed they were wrongfully terminated for refusing to remain silent and, upon reinstatement, were subjected to further retaliation (loss of clothing and equipment, increased scheduling on holidays and weekends, and denial of training and career advancement opportunities), which continues to this day.

The defendants moved for summary judgment on grounds of qualified immunity, claiming that the evidence failed to show a violation of a clearly established right. The district court granted the defendants' motion for summary judgment, holding that the Taylors failed to state a claim of unlawful retaliation because they did not establish that they were punished for speaking on a matter of "public concern."

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment *de novo*. *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, all inferences drawn from the facts must be reviewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996).

## III. DISCUSSION

A public employee has a constitutional right to comment on matters of public concern without fear of reprisal from the government as employer. *Connick v. Myers*, 461 U.S. 138, 140, 145-46 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). Thus, even though the government has greater authority to regulate the speech of its employees than it has in regulating the speech of the public at large, public employers cannot silence their employees simply because they disapprove of their speech. *See Rankin v. McPherson*, 483 U.S. 378, 384 (1987). "[R]etaliation by a government employer against an individual who exercises his First Amendment rights constitutes a First Amendment violation." *Perry v. McGinnis*, 209 F.3d 597, 604 (6th Cir. 2000).

This circuit has a established a three-step process for evaluating a public employee's claim of unlawful retaliation. First, the employee must establish that his speech is protected. To accomplish this, the employee must show that his speech touches on a matter of public concern, *Connick*, 461 U.S. at 147, and demonstrate that his interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer. *Pickering,* 391 U.S. at 574. This determination is a question of law for the court to decide. *Connick*, 461 U.S. at 148 n.10. Second, the employee must show that the employer's adverse action would chill an ordinary person in the exercise of his First Amendment rights. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th. Cir. 2001). Finally, the employee must present sufficient evidence to create a genuine issue as to whether his speech was a substantial or motivating factor in the employer's decision to discipline or dismiss. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

## A. Matter of Public Concern

The district court held that Officer Taylor's speech did not touch on a matter of public concern because his speech merely consisted of a report made in the course of his employment. In so ruling, the court noted that the report contained no accusation of excessive force and was not disclosed to the public. Similarly, the court concluded that Sergeant Taylor's comment to Lieutenant Catlett was not protected because it addressed an internal personnel matter and did not express an opinion that Szczepanowski violated Longmire's rights. For reasons explained below, we reverse the decision of the district court.

Although it was not necessary for the Taylors to have spoken to the press or to the general public in order for their speech to be protected, *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 412 (1979), some aspect of their speech must touch upon a matter of public concern. *Connick,* 461

U.S. at 146; *see also Charvat v. Eastern Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 617 (6th Cir. 2001); *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 579 (6th Cir. 1997) ("Constitutional protection for speech on matters of public concern is not premised on the communication of that speech to the public."). Speech touches upon a matter of public concern if it can be "fairly considered as relating to any matter of political, social or other concern to the community." *Connick*, 461 U.S. at 146. Absent unusual circumstances, however, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest," his speech is not afforded constitutional protection. *Id.* at 147.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the record as a whole." *Id.* at 147-48. The essence of the Taylors' argument is that the content of their speech--alleged police brutality--addresses a matter of inherent public concern. Moreover, they assert that their speech should be afforded constitutional protection because its purpose was to "bring to light actual or potential wrongdoing or breach of public trust." *See Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1988); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) (holding that statements regarding the operation of public organizations in accordance with law are matters of public concern).

Relying on *Thomson v. Scheid*, 977 F.2d 1017 (6th Cir. 1992), the defendants contend that, even if the Taylors' speech indirectly implicates a matter of public concern, none of their statements is protected because they were made in the course of their employment, not in their role as a private citizen. In *Thomson*, the plaintiff, a fraud investigator, argued that his conversation with a supervisor and his decision to send a report detailing potential fraud involving a local county official to the Inspector General were protected. *Id.* at 1020-21. In reviewing the plaintiff's claim, this court

determined that the plaintiff's conversation with his supervisor about the investigation, her reminder to him that his investigation was confidential, and her warning not to pursue the matter without following department procedures, concerned his duties as an employee and addressed only matters of internal department policy. Therefore, his speech could not be considered a matter of public concern. *Id.* We also concluded that the plaintiff's decision to turn over his report to the Office of the Inspector General was not protected because the plaintiff's contact was approved by his supervisors, which made his contact an action in the course of his employment. *Id.* In making these determinations, this court stated that "First Amendment protection extends to a public employee's speech when he speaks as a citizen, on a matter of public concern, but does not extend to speech made in the course of acting as a public employee." *Id.*

The defendants seize upon this language and argue that when a public employee speaks in his role as a public employee, his speech cannot touch on a matter of public concern. This argument, in our opinion, relies on an overly broad reading of *Thomson*. Immediately after stating the language relied upon by the defendants, the *Thomson* court explained that "[n]ot *all* matters discussed within a government office are of public concern, and thus internal office communication does not *necessarily* give rise to a constitutional claim." *Id.* at 1020-21 (emphasis added). *Thomson* therefore did not purport to strip public employees of the First Amendment's protection for all speech that occurs in the course of employment. Rather, *Thomson* simply implies that the context of the speech (i.e., whether an employee speaks in the course of his employment) is relevant to, but not determinative of, whether the speech touches on a matter of public concern.

Our recent decision in *Cockrel*, 270 F.3d 1036, which implicitly rejects a broad interpretation of *Thomson*, confirms this view. In *Cockrel*, we declined to follow other circuits that have held that a teacher's statements, made in the course

of a classroom lesson, cannot touch upon a matter of public concern because "a teacher, in choosing what he or she will teach his students, is not speaking as a citizen, but rather as an employee on matters of private interest." *Id.* at 1051. Instead, we held that a public teacher's speech, made in the role of employee, is protected so long as the speech itself addresses a matter of public concern. *Id.* at 1052 ("[A]lthough [Cockrel] was speaking in her role as an employee when presenting information on the environmental benefits of industrial hemp, the content of her speech. . . most certainly involved matters related to the political and social concern of the community, as opposed to mere matters of private interest."). In doing so, we concluded that the Supreme Court made clear in *Connick* that "the key question is not whether a person is speaking in his role as an employee or citizen, but whether the employee's speech in fact touches on a matter of public concern."[1] *Id.* at 1052.

In this regard, the defendants argue that the Taylors' speech cannot be characterized as an attempt to "bring to light" police brutality since neither officer unequivocally stated that Szczepanowski used excessive force. In their view, Officer Taylor's speech amounts to nothing more than recording the arrest incident and advising Longmire's wife of her husband's rights pursuant to police procedure. Further, they assert that Sergeant Taylor's comments fall short of alleging potential wrongdoing, since he merely suggested that "if

---

[1]The decision in *Connick* does not preclude First Amendment protection when an employee speaks in the course of his employment if the employee's speech involves a matter of public concern. *Connick* went only so far as to hold that:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of *only* personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick*, 461 U.S. at 147 (emphasis added).

Szczepanowski did have a problem, it might be a good idea to move him out of a high crime area."

When examining the content of speech, "the proper inquiry [is] not what might incidentally be conveyed by the fact that the employee spoke in a certain way, [but] the *point* of the speech in question." *Dambrot*, 55 F.3d at 1187 (emphasis in original). The point of the speech, however, is not to be confused with the speaker's motivation for speaking. *Chappel*, 131 F.3d at 575. The inquiry is primarily concerned with what the speaker intended to communicate through his statement, and not his reasons for speaking. *Id.* at 575 ("The motive which underlies an employee's statements is a relevant, but not necessarily dispositive factor when considering whether an employee's statements may be fairly characterized as relating to any matter of political, social, or other concern to the community.").

The Taylors' speech was intended to communicate the potential wrongdoing of a fellow officer. Officer Taylor's report clearly implicated Szczepanowski in the use of excessive force. And, although his report contained facts rather than accusations, the purpose of his report was to bring to light conduct that warranted further investigation to ensure that the arrests were being carried out according to law. Similarly, Sergeant Taylor's suggestion to Catlett to use his influence to get Szczepanowski moved if there was a problem clearly implies that Taylor strongly believed that Szczepanowski had a problem with excessive force, particularly since the comment was made soon after Sergeant Taylor learned that Szczepanowki had broken the leg of another arrestee. The fact that Sergeant Taylor couched his recommendation in terms of "if" does not lessen the allegation of wrongdoing since Sergeant Taylor would not have asked Catlett to use his "influence" if he did not intend to communicate that he believed there was a serious problem. There is little doubt that, in this context, the Taylors' supervisors perceived their comments as communicating a concern about a fellow officer's potential for excessive force.

Accordingly, the Taylors' speech touches on a matter of public concern.

## B. Causation

Next, the defendants contend that the Taylors cannot establish that the decision to terminate them was motivated, in part, by the exercise of their First Amendment rights. They assert that the Taylors have failed to rebut the defendants' declarations stating that the Taylors were disciplined for reasons wholly unrelated to the free exercise of speech. The defendants further maintain that the Taylors cannot explain how firing them would have resulted in silencing them about the Longmire incident.

This circuit has held that "the nonmoving party cannot rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent." *Cockrel*, 270 F.3d at 1055. Rather, to survive a motion for summary judgment, the employee must present sufficient evidence linking his speech to the employer's adverse decision so that a reasonable factfinder could conclude, by a preponderance of the evidence, that the speech, at least in part, motivated the decision to discharge. *Id.*

The Taylors have presented adequate evidence suggesting that the defendants' actions were partially motivated by their desire to silence them about the Longmire incident. First, aside from the temporal proximity between the Taylors' speech and their termination, the Taylors were terminated for acts that the department characterized as attempts to cover for Szczepanowski when in fact the Taylors were the impetus for the investigation.

Second, several other police officers who participated in the Longmire arrest also failed to follow department procedures, yet they were not disciplined or even reprimanded. Officer Taylor completed the required Use of Force Report and was later terminated when Longmire's resisting-arrest warrant

contained facts that were inconsistent with this report. Officer Wells, who like Taylor observed the Longmire's injuries, failed to file a report and was not reprimanded. Sergeant White, Szczepanowski's immediate supervisor, who was present on the scene with Sergeant Taylor, failed to file a supervisor report or investigate Szczepanowski's actions. He received a demotion and a thirty-day suspension, but those sanctions were later rescinded. The department proceeded with charges against Sergeant Taylor for his failure to take appropriate action regarding allegations of officer abuse (remove Szczepanowski from his duties) and his failure to have the evidence (blood) properly processed, despite the fact that he was the only superior officer who pressed for further investigation into Szczepanowski's alleged abuse.

After reviewing the evidence, a reasonable juror could conclude that the disparate treatment of the officers involved in the Longmire incident shows that the department targeted the Taylors because of their speech. As such, the temporal proximity between the Taylors' speech, and the manner in which the department disciplined the officers involved, constitute sufficient evidence for the Taylors to create a genuine issue that their speech was a substantial or motivating factor in their termination.

## C. Qualified Immunity

Lastly, the defendants claim that, even if the Taylors establish a violation of their constitutional rights, they are entitled to qualified immunity. The district court did not reach this issue and we decline to consider this claim in the first instance. *See Bauer v. Montgomery*, 215 F.3d 656, 662 (6th Cir. 2000) (holding, under nearly identical circumstances, that this court should not consider a qualified immunity defense where the district court did not reach the issue). Therefore, we remand this issue to the district court for further consideration.

## IV. CONCLUSION

For the reasons stated herein, we **REVERSE** the decision of the district court and **REMAND** for further proceedings.