IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 2, 2009 Session

**DOROTHY KING, R.N. and PATRICIA BATTLE, R.N., ET AL. v.
VIRGINIA BETTS, Commissioner of the Tennessee Department of Mental Health and
Developmental Disabilities, in her individual capacity, ET AL.**

**Direct Appeal from the Chancery Court for Davidson County
No. 06-943-I     Claudia Bonnyman, Chancellor**

_____

**No. M2009-00117-COA-R3-CV - Filed December 18, 2009**

_____

This is a 42 U.S.C. § 1983 claim based on alleged retaliation in violation of the First Amendment. Appellant claims that Appellees retaliated against her in her employment for speaking out against a hospital policy. Appellees assert the defense of qualified immunity. Appellant appeals from the trial court's decision to grant summary judgment and judgment on the pleadings to the Appellees. Finding that there are material issues of fact in dispute, we reverse the trial court's grant of summary judgment. Further, we find that Appellant has stated a claim upon which relief may be granted and, therefore, reverse the trial court's decision to grant Appellees' motion for judgment on the pleadings. Affirmed in part, reversed in part and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part,
Reversed in Part and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

William J. Haynes, Nashville, TN, for the Appellant, Patricia Battle, R.N.

Robert E. Cooper, Jr., Attorney General and Reporter, and Michael E. Moore, Solicitor General, John W. Dalton, Senior Counsel, Nashville, Tennessee, for Appellees, Virginia Betts, Lynn McDonald, Dr. Lindsey Douglas and Glynda Heinicke.

**OPINION**

Appellant, Patricia Battle ("Battle"), and co-Plaintiff, Dorothy King ("King") are registered nurses employed by the Middle Tennessee Mental Health Institute ("Institute"). In July 2003, the Institute implemented a new policy requiring nurses to dispense medication from a "mini-pharmacy" when a pharmacist was not on duty. Many of the nurses, including Battle and King, expressed

concern that this policy required them to act outside the scope of their nursing license. Battle and King filed an administrative action with the Tennessee Department of Health in 2004, seeking an order declaring that the policy violated the Tennessee Board of Nursing licensing requirements. Subsequently, the parties entered into an agreed order stating that the policy did not violate the licensing requirements. Nevertheless, Battle and King continued to have concerns and in 2005 contacted their State Representative about this issue. The State Representative contacted the office of the Commissioner of the Tennessee Department of Mental Health to discuss the policy, expressing concern that the policy was compromising patient care. Battle contends that she was subsequently subjected to retaliatory employment action as the result of her resistance to the policy. Specifically, Battle alleges that Gloria Heinike was hostile towards Battle when Battle requested that Heinike attend to a patient. Moreover, Battle asserts that: (1) hostile comments were made on her performance evaluation, (2) she was inappropriately targeted for termination, (3) she was denied a security detail when she requested one to accompany her when supervising the violent patients, (4) she was subjected to hostile and disparaging comments, (5) she was not notified that management was making rounds as was standard practice, (6) she was wrongly issued a written reprimand that was subsequently overruled, (7) she was not scheduled as a supervisor even though she is a supervisor, and (8) that her office was relocated.

Battle filed a complaint on April 17, 2006 against the Tennessee Department of Health and the Tennessee Department of Mental Health and Developmental Disabilities, alleging, in pertinent part, violations of 42 U.S.C. §1983.[1] Battle filed an amended complaint on September 6, 2006, replacing the original defendants and naming as defendants Virginia Betts, Commissioner of the Tennessee Department of Mental Health and Developmental Disabilities, Lynn McDonald, Chief Officer of Middle Tennessee Mental Health Institute, Dr. Lindsey Douglas, Grievance Review Officer for Middle Tennessee Mental Health Institute, and Glynda Heinicke, Nursing Supervisor at Middle Tennessee Mental Health Institute (collectively "Appellees").[2] Battle filed a second amended complaint on February 23, 2007, with permission of the court, naming Appellees in their individual capacity and seeking monetary damages. Battle alleged that Appellees violated her right to free speech under the First Amendment by taking retaliatory action against both her and King, in response to their criticism of the "mini-pharmacy" policy.

Appellees filed an answer on March 15, 2007, in which they raised the defense of qualified immunity. On October 29, 2007, Appellees filed an amended answer, also raising the defense of qualified immunity. Appellees then filed a Motion for Summary Judgment and Statement of Undisputed Facts on January 11, 2008. In their Motion for Summary Judgment, Appellees asserted that there were no disputed material facts and that Battle could not establish that Appellees violated 42 U.S.C. § 1983. Battle filed a Memorandum in Opposition to Appellee's Motion for Summary

---

[1] King also joined in this action and subsequently appealed. However, her appeal was dismissed by order of this Court on September 11, 2009. Accordingly, we do not address her appeal in this opinion.

[2] We note that Defendant Dr. Lindsay Douglas is not named in Battle's brief. However, we find this to be a typographical error as Dr. Douglas is named on the Notice of Appeal and throughout Appellees' brief and there is no separate order, in the record, dismissing her from the case.

Judgment, a response to Appellees' Statement of Undisputed Facts, and a Counter Statement of Undisputed Facts. The trial court heard arguments on the Motion for Summary Judgment on February 22, 2008, and entered an agreed order on March 31, 2008, deferring its ruling on the motion, and ordering the parties to file an additional memorandum of law on the issues of: 1) the first amendment rights of public employees; 2) the application of *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Educ. Of Township High School Dist. 205, Will City*, 391 U.S. 563 (1968); 3) the disposition of summary judgment motions in cases involving the first amendment rights of public employees; and 4) whether Appellees are entitled to qualified immunity.

Both parties submitted supplemental briefs to the trial court. Appellees also subsequently filed a Motion for Judgment on the Pleadings based on the issue of qualified immunity. Battle filed a Motion to Strike, asking the court to strike the Appellees' Motion for Judgment on the Pleadings as being untimely filed and to strike the portion of the Appellees' Supplemental Memorandum in Support of their Motion for Summary Judgment dealing with the statute of limitations.

The trial court held a hearing on the Motion for Summary Judgment, the Motion for Judgment on the Pleadings, and the Motion to Strike on July 15, 2008. Following arguments, the trial court ruled from the bench. The trial court denied Battle's Motion to Strike the Appellees' Motion for Judgment on the Pleadings and granted the Motion to Strike the statute of limitations defense raised in the Appellees' supplemental brief. The trial court stated that it was dismissing the lawsuit because the Appellees were immune. The trial court granted the "motion for summary judgment on one ground and the motion for judgment on the pleadings as to qualified immunity." In discussing whether the speech was protected, the trial court stated that Battle's speech was "not made pursuant to [her] official duties necessarily, nor is it true that [Battle was] speaking as [a] citizen[] on matters of public concern." The trial court assumed that the speech was protected and found that the government had an adequate justification for its conduct. The trial court found that the conduct taken was to warn the nurses that, if they did not perform their duties under the new policy, their jobs would be terminated. The trial court found that this was not "negative action towards the plaintiffs' employment." The trial court also pointed out that there had been other "cold shoulder treatment" of the plaintiffs, but found that any such conduct was justified and reasonable. As to the issue of qualified immunity, the trial court found that qualified immunity applied as "the right that was allegedly violated is not a clearly established right of which a reasonable person would have known." On November 2, 2008, the trial court entered an order, adopting its bench ruling "as the ruling which dismisses the case."

Battle then filed a motion to alter or amend ,which the trial court subsequently denied. Battle appeals raising the following issues:

1. Whether the Chancery Court properly applied the summary judgment standard under Tenn. R. Civ. P. 56?

2. Whether the Chancery Court properly granted summary judgment notwithstanding a final determination as to whether the speech at issue was protected under the First Amendment?

3.     Whether the Chancery Court properly granted summary judgment on the ground that Nurse Battle did not suffer an adverse employment action sufficient to establish a First Amendment retaliation claim under 42 U.S.C. § 1983?

4.     Whether the Chancery Court erred in allowing Appellees to invoke the qualified immunity defense for the purpose of summary judgment in an untimely manner?

5.     Whether the Chancery Court properly granted summary judgment on the ground that the Appellees were each entitled to qualified immunity?

**Standard of Review:**

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997). In evaluating the trial court's decision to grant summary judgment, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Mooney v. Sneed*, 30 S.W.3d 304, 305–06 (Tenn. 2000); *Bryd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn. 1993).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. If the moving party's motion is properly supported, "The burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing *Byrd*, 847 S.W.2d at 215). In order to shift the burden of production, "the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense." *Hannan,* 270 S.W.3d at 5. However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id.* at 8. Instead, the moving party has the more difficult task of demonstrating "that the nonmoving party cannot establish an essential element of the claim at trial." *Id.* at 7.

**Analysis**
*I. First Amendment Claim*

The United States Supreme Court has "made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)(see *e.g.*, *United States v. Treasury Employees*, 513 U.S. 454, 466 (1995); *Rankin v. McPherson,* 483 U.S. 378, 384 (1987); *Connick v. Myers,* 461 U.S. 138, 147 (1983); *Pickering v. Board of Educ. Of Township High School Dist. 205, Will City*, 391 U.S. 563, 568 (1968)).

A three part test exists for analyzing a public employee's claim of First Amendment retaliation. *Haynes v. City of Circleville, Ohio, et al.,* 474 F.3d 357, 362 (6th Cir. 2007)(citing *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003)). First, the public employee must show that the speech at issue was protected. *Id.* Second, the public employee must show that he or she suffered adverse employment action such that "would chill an ordinary person in the exercise of his or her First Amendment rights." *Id.* Third, the public employee must show a causal connection between the speech and the conduct complained of. *Id.*

In determining whether the speech is protected, the trial court must first determine whether the employee spoke as a citizen on a matter of public concern. *Pickering*, 391 U.S. at 568. If the answer is yes, then the speech may be protected. *Garcetti*, 547 U.S. at 418 (citing *Connick,* 461 U.S at 147)). If the answer is no, then the employee has no First Amendment cause of action. *Id.* As clarified by the Supreme Court in *Garcetti*, when an employee speaks pursuant to his or her official duties, the speech is not protected. *Garcetti,* 547 U.S. at 425. Neither the fact that the speech was made at the place of employment nor the fact that the speech concerns the subject matter of the employee's employment is dispositive, as the speech may still be entitled to First Amendment protection. *Id.* at 420-21. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the record as a whole." *Connick,* 461 U.S. at 147-48. The court must make "an independent constitutional judgment on the facts of the case." *Id.* at n.10 (citing *Jacobellis v. Ohio*, 378 U.S. 184, 190 (1964)). In examining the content of the speech, the trial court is to consider what is the "point of the speech," meaning what the speaker intended to communicate and not what the speaker's motivations were in making the statement. *Taylor*, 338 F.3d at 645 (citations omitted). If the trial court determines that the employee spoke as a citizen on a matter of public concern, the trial court must then consider whether the government's interest outweighs the employee's interest in the speech. *Taylor*, 338 F.3d at 643 (citing *Pickering*, 391 U.S. at 574). In other words, the court must determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Connick*, 547 U.S. at 418 (citing *Pickering*, 391 U.S. at 568). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419. The determination that speech is protected or not protected, is a question of law for the court to decide. *Taylor*, 338 F.3d at 643 (citing *Connick,* 547 U.S. at 148).

*a. Protected Speech*

Battle first contends that the trial court erred by granting summary judgment without first deciding whether or not the speech was protected. In granting the motion for summary judgment, the trial court stated that it could not determine whether the speech was protected, but assumed for the purpose of summary judgment that it was protected. Battle submits that the trial court must decide whether the speech was protected before it may rule on the Motion for Summary Judgment. In making a First Amendment retaliation claim, Battle must establish three separate elements: protected speech, adverse employment action, and a causal connection between the speech and the action taken. *Haynes* 474 F.3d at 362. If Battle fails to establish any one of these three elements,

her claim will fail. Because Battle must prove all three elements, summary judgment would be appropriate if the trial court correctly determined that Battle could not prove any one of the three elements. The trial court determined that Battle could not prove the second element, adverse employment action. Therefore, the trial court did not err by granting summary judgment without first determining whether the speech was protected. However, the issue of whether summary judgment was appropriately granted is not fully answered by this finding.

### b. Adverse Employment Action

In order to establish her claim, Battle must prove that she was subject to adverse employment action. In other words, Battle must prove that she was subject to action by her employer that "would chill an ordinary person in the exercise of his or her First Amendment rights." **Haynes,** 474 F.3d at 362. The trial court found that the action taken by the Appellees was a warning to the nurses that, if they did not perform their required duties, their jobs would be terminated. The trial court held that this did not amount to "negative action towards the plaintiffs' employment." The trial court also found that there had been "cold shoulder treatment," but that any such conduct was justified and reasonable.

After reviewing the record, however, we find that there are material issues of fact regarding the issue of adverse employment action, making summary judgment inappropriate at this time. Appellees stated in their Statement of Undisputed Facts, Paragraph Eighteen, "Plaintiff Battle states Commissioner Betts retaliated against her by writing her a letter of commendation." In her response, Battle denied this statement of fact, and stated that the Appellees either "overlook or ignore the complete testimony of Nurse Battle, which itemizes the methods in which Defendant Betts retaliated against her." It appears to this Court, that there is a factual dispute about the alleged conduct constituting the retaliatory action. Without knowing exactly what the alleged retaliatory action is, it is impossible for the trial court to determine as a matter of law, whether there was any adverse employment action.[3] Consequently, we find that summary judgment is inappropriate on the basis that Battle did not suffer any adverse employment action.

### II. Qualified Immunity

Our analysis does not end with the First Amendment claim, as the Appellees may still be entitled to summary judgment on the basis of qualified immunity. First, we address Battle's contention that the trial court abused its discretion in allowing the Appellees to assert the defense

---

[3] The trial court explicitly stated that it was not making a ruling as to whether the speech was protected or not protected, but only assuming it was protected for purposes of summary judgment. Accordingly, we only review the finding that no adverse employment action occurred. We do not review the facts, disputed or undisputed, on the issue of whether the speech was protected. The trial court made a finding as to the reasonableness of the action taken. The determination that conduct is reasonable or justified is an element to determining whether the speech is protected. *Connick*, 547 U.S. at 418. Any determination that the conduct was reasonable or justified for the purposes of determining whether the speech was protected would also be premature as there are factual disputes as to what action was taken.

of qualified immunity. Battle submits that the Appellees only raised this defense in their response to her reply in opposition to the Motion for Summary Judgment, and that she suffered "prejudice in the form of additional briefing and delay" when the trial court allowed the Appellees to address this issue in supplemental pleadings. Battle fails, however, to note that Appellees raised this defense in both their original answer and in their amended answer. Additionally, when ordering supplemental briefs, qualified immunity was only one of the four issues which the trial court ordered both parties to address. We cannot find that the trial court abused its discretion in allowing Appellees to assert qualified immunity.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity privilege entitles a party to "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). There is a "'tripartite' procedure for evaluating claims of qualified immunity." *Moldowan v. City of Warren,* 578 F.3d 351, 375 (6th Cir. 2009)(quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).

> "First, [the court] must determine whether a constitutional violation occurred; second, [the court] must determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, [the court] determine[s] whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Williams,* 186 F.3d at 691 (citing *Dickerson v. McClellan,* 101 F.3d 1151,1157-58 (6th Cir. 1996)). The United State Supreme Court in *Pearson v. Callahan*, --- U.S. ---, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), recently clarified that a court considering the issue of qualified immunity is free to consider these three questions in whatever order is appropriate considering the case before it. *Pearson*, 129 S.Ct. at 818. Once the defense is properly raised, the burden is on the Plaintiff to show that the defendants are not entitled to qualified immunity. *Moldowan*, 578 F.3d at 375.

In considering whether a constitutional violation has occurred, the court must consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194 (2001)(abrogated on other grounds by *Pearson,* 129 S. Ct. 808). In determining whether the right violated was "clearly established," the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan*, 578 F.3d at 375 (citing *Saucier*, 533 U.S. at 201). Thus, "the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This is not to say that courts must have agreed on a precise standard. *Saucier,* 533 U.S. at 201.

The trial court determined that the right allegedly violated was not clearly established. Thus, the trial court determined that, in the context of this case, it was not clearly established that Battle had a constitutional right to take the action she took regarding the "mini-pharmacy" policy. While the issue of qualified immunity is a question of law, *Hall v. Shipley*, 932 F.2d 1147, 1150 (6th Cir. 1991), it often involves first answering questions of fact. *Moldowan*, 578 F.3d at 371; see also *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Summary judgment is inappropriate when there are "factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the [officials] did acts which violate clearly established rights." *Hall*, 932 F.2d at 1154.

To determine whether a right is clearly established, the trial court must examine the specific context of the case. *Maldowan*, 578 F.3d at 375. As stated by the trial court, it could not determine whether Battle was speaking pursuant to her official duties, or as a private citizen. Additionally, Battle contends that she was speaking due to her concerns about the welfare of the patients at the state mental hospital. The Appellees contend, however, that she was speaking as a disgruntled employee, upset about her job duties. These disputes present two starkly different contexts in which to determine whether Battle had a clearly protected constitutional right to speak out against the "mini-pharmacy" policy. Further, qualified immunity would not apply if the Appellees' conduct was unreasonable "in light of the clearly established constitutional rights." *Williams*, 186 F.3d at 691. Any determination for the purpose of summary judgment that Appellees' actions were reasonable would be premature as factual disputes remain concerning what the conduct was. Because of these disputes, summary judgment on the issue of qualified immunity was inappropriate.

Finally, it appears from the Battle's brief that she also contends that the trial court erred in allowing Appellees to submit a Motion for Judgment on the Pleadings after the deadline for dispositive motions under the Scheduling Order had passed. "Matters pertaining to scheduling orders are within the sound discretion of the trial court." *Waters v. Cook*, No. M2007-01867-COA-RM-CV, 2008 WL 4072104 (Tenn. Ct. App. 2008). We cannot find that the trial court abused its discretion in allowing Appellees to submit a Motion for Judgment on the Pleadings. However, we do find that the trial court erred in granting the Appellee's Motion for Judgment on the Pleadings.[4] A motion for judgment on the pleadings is in effect a motion to dismiss for failure to state a claim upon which relief can be granted. *Weldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998). In considering a motion for judgment on the pleadings, the trial court must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the plaintiff. *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004)(quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). This determination is a question of law and is reviewed *de novo*, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Upon review of the record, accepting all well-pleaded facts and reasonable inferences drawn therefrom as true, we cannot say that Battle has failed to state a claim upon which relief may be granted. Consequently, we reverse the trial court's decision to grant Appellees' Motion for Judgment on the Pleadings.

---

[4] Tenn. R. App. P. 13(b) allows this Court to consider issues not presented for review in the interest of fairness and justice. *Aaron v. Aaron,* 909 S.W.2d 408, 412 (Tenn. Ct. App. 1995).

## Conclusion

In sum, we find that the trial court did not err in considering the Motion for Summary Judgment before determining whether the speech was protected, in allowing the Appellees to assert the defense of qualified immunity in their Motion for Summary Judgment, or in considering Appellees' Motion for Judgment on the Pleadings. However, because there are material issues of fact in dispute, we find that the trial court erred in granting summary judgment. Accordingly, we reverse the trial court's decision to grant summary judgment to the Appellees. Further, we find that the trial court erred in granting Appellees' Motion for Judgment on the pleadings and reverse that decision as well. We remand for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the Appellant, Patricia Battle, and her surety, and one-half to the Appellees, Virginia Betts, Lynn McDonald, Lindsey Douglas, and Glynda Heinicke for which execution may issue if necessary.

_____

J. STEVEN STAFFORD, J.