NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0251n.06

No. 14-5787

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VERVITA STIGER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHEYENNE JOHNSON, Shelby County | ) | WESTERN DISTRICT OF TENNESSEE |
| Assessor of Property; SHELBY COUNTY | ) | |
| GOVERNMENT; SHELBY COUNTY TAX | ) | OPINION |
| ASSESSOR, | ) | |
| | ) | |
| Defendants-Appellees. | | |

BEFORE:     SILER, COOK, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Vervita Stiger worked for Shelby County and believed that she was entitled to be paid at a higher job-classification level based on the work that she performed.  She filed this lawsuit, alleging that the county violated her procedural due process rights in considering her reclassification request and that the denial of reclassification was retaliation for First Amendment protected activity.  The district court granted summary judgment to the defendants, and Stiger appealed.  For the following reasons, we AFFIRM the judgment of the district court.

## I.     BACKGROUND

Shelby County employees are generally governed by a civil service classification system, unless they fall under specified exceptions.  Shelby Cnty., Tenn., Code § 14-28 (2011) (formerly

codified at § 12-28). For each position within the classified service, the county prepares a written description of job duties and qualifications and assigns the position to a particular job classification. *Id.* § 14-29. Each classification is then assigned a particular salary range. *Id.* § 14-30. The County Code further requires the county to establish written personnel policies. *Id.* § 14-31. The events at issue in this lawsuit span two fiscal years, and in each fiscal year, the county issued a Compensation Policy. Each policy provides that "this Compensation Policy supersedes previous salary policies, personnel systems, plans or guidelines." The Compensation Policies further state: "Approved job evaluations resulting in reclassification to a higher salary level are not authorized unless otherwise provided by the approved budget of the funding source, consistent with prevailing resolutions adopted by the Shelby County Board of Commissioners." This policy is consistent with a hiring and reclassification freeze resolution that was passed in May 2008 and renewed for several years.

Stiger worked in the Shelby County Assessor's Office from 1979 until she retired in 2011. In 2008, Stiger publicly campaigned for the Republican candidate for Assessor, but the Democrat, Cheyenne Johnson, won. Johnson and Stiger had been coworkers in the Assessor's Office, and had a friendly relationship before the election. At a joint campaign event before she was elected, Johnson seemed to direct a hostile statement to a group of Assessor's Office employees who supported her opponent, including Stiger. After the election, Johnson was less friendly to Stiger than she had been before. When Stiger announced her retirement, Johnson attempted to dissuade her and to convince her to continue working for the Assessor's Office as a temporary employee.

Over her time at the Assessor's Office, Stiger held a number of job classifications, culminating in "Administrative Technician." In September 2008, she began working for Chuck

Blow in the Residential Reappraisal Department. A few years later, she applied for an Administrative Aide position in the Assessor's office that paid $10,000 more per year than her Administrative Technician salary. After she was not selected for the position, she compared the job description to her day-to-day job duties and concluded that they were similar.

Stiger then sought a job study of her position, seeking to have it reclassified as an Administrative Aide position. She began by sending a memorandum to Blow and to Lorie Ingram-Glenn, the manager of the HR department. Ingram-Glenn denied the request and directed Stiger to the elected official, Cheyenne Johnson. Johnson, in turn, referred the matter to Ingram-Glenn's supervisor, who again denied the request. Stiger pursued the grievance to a Fourth Step Administrative Grievance hearing, and the hearing officer noted a lack of power to reclassify Stiger and directed the Assessor to review her job duties. Ingram-Glenn conducted the "desk review" of Stiger's duties and found that they were within the job classification. Finally, Ingram-Glenn's supervisor reviewed her findings and approved them, stating that "this matter is closed."

Stiger brought this lawsuit, alleging that the denial of her reclassification did not follow the county's own procedures. She claimed that the deviations violated her procedural due process rights under the Fourteenth Amendment and constituted retaliation by Johnson for Stiger's campaign activities in the 2008 election. The district court granted the defendants' motion for summary judgment, reasoning that Stiger did not identify a property right for which procedural due process was required and that Stiger could show neither an adverse employment action nor adequate causation to sustain a First Amendment retaliation claim. Stiger appealed.

## II. DISCUSSION

This court reviews *de novo* the district court's grant of summary judgment. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 843 (6th Cir. 2013). Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" for the court to deny defendant's motion for summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Stiger's first claim sounds under the Fourteenth Amendment, which provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, a plaintiff must first identify a protected liberty or property interest of which she was deprived. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 (1972). Only then will we "examine[] whether the procedures attendant upon that deprivation were constitutionally sufficient." *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993) (internal quotation marks omitted). Stiger contends that she had a property interest in the salary for the job classification that accurately reflected her duties. "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. "[A] party cannot possess a property interest in the receipt of a benefit when the [county]'s decision to award or withhold the

benefit is wholly discretionary." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).

Stiger does not provide evidence that Shelby County maintained rules or understandings that guaranteed an employee additional pay if she performed work above her job classification. Her primary evidence on this point concerns coworkers who successfully requested job reclassification studies in 2000 and 2005. Stiger alleges that her entitlement to reclassification began in September 2008, when she began working for Blow and performed additional duties for him. In the recent case of *Elion v. Shelby Cnty. Gov't*, No. 08-2411-P, 2012 WL 7110531, at *8–12 (W.D. Tenn. Dec. 10, 2012), however, the district court reviewed the prior policies and determined that they created no such entitlement. From at least May 2008 through Stiger's retirement on June 30, 2011, moreover, county compensation policies made clear that "job evaluations resulting in reclassification to a higher salary level [we]re not authorized" without explicit authorization from the Board of Commissioners.[1] This language goes beyond leaving reclassifications to the discretion of individual county decision makers and makes such reclassifications available only in exceptional circumstances. Thus, even if prior county policies had established an entitlement to reclassification, the intervening ordinances and policies barred reclassification and extinguished any entitlement. Because Stiger cannot show that she had a property interest in the reclassification, her procedural due process claim fails.

Stiger's First Amendment claim likewise fails. "For a public employee to establish a claim of First Amendment retaliation, he must show that (1) he engaged in constitutionally

---

[1]Stiger asserted in her Statement of Issues of Disputed Material Fact that the reclassification freeze ended in mid-2009 and cites to two pages of a county official's deposition for support. Only one of those pages is actually in the record, due to an apparent scanning error, and that page does not support Stiger's assertion because it ignores the compensation policies. We doubt that the missing page somehow contradicts the plain language of the compensation policies, but the court could not ground a denial of summary judgment on hypothetical evidence not in the record, and Stiger made no effort to correct the filing.

protected speech or conduct; (2) the employer took an adverse action against him that would deter an ordinary person from engaging in that conduct; and (3) there is a causal connection between elements one and two." *Rorrer v. City of Stow*, 743 F.3d 1025, 1047 (6th Cir. 2014). Stiger satisfies the first element: She engaged in protected election-related speech. Even if we assume she could prove that the reclassification denial constitutes an adverse action, she cannot show any connection between the two.

Stiger's primary evidence of causation is that Johnson knew of her campaign activities, as evidenced by both women's presence at the joint campaign event. "This circuit has held that the nonmoving party cannot rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent." *Taylor v. Keith*, 338 F.3d 639, 646 (6th Cir. 2003) (internal quotation marks omitted). In certain cases, temporal proximity can be sufficient evidence of the causal relationship. *See, e.g., Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525–26 (6th Cir. 2008). But in this case, the campaign event occurred approximately two years before Stiger even requested a reclassification study—let alone when Johnson purportedly interfered with Stiger's request. Stiger's additional evidence of causation is merely that Johnson was less friendly than she had been, and that other Assessor's Office employees' reclassification requests were treated differently before the County enacted its reclassification freeze. No reasonable jury, considering this evidence, could find that Johnson somehow interfered with Stiger's reclassification request in an attempt to retaliate for her protected speech activities.

For the foregoing reasons, we AFFIRM the judgment of the district court.