**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0341n.06

Case No. 17-2056

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 12, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. MARIANNE GUZALL and MARIANNE D. GUZALL a/k/a MARIANNA GUZALL, individually, | ) ) ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| CITY OF ROMULUS, MICH., ALAN R. LAMBERT, BETSEY KRAMPITZ, | ) ) ) | |
| Defendants-Appellees. | ) | |

**BEFORE: MERRITT, WHITE, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** In 2011, Plaintiff-Appellant Marianne Guzall ("Guzall") was laid off from her position as an administrative assistant in the Mayor's office for Defendant-Appellee City of Romulus, Michigan (the "City"). At the time, the City was experiencing severe financial adversity and had twice failed to pass millages to increase its revenue. Guzall claimed that she was fired because of her stated refusal to lie to Michigan State Police regarding an investigation into the City's police force and Mayor's office, and for later allegedly reporting illegal activities to the City Council. Accordingly, she filed a lengthy complaint alleging at least six distinct claims against the City, the City's former mayor, Alan

Lambert ("Mayor Lambert"), and Mayor Lambert's former chief of staff Betsey Krampitz ("Krampitz"). After protracted litigation, the district court granted summary judgment to Defendants on each count. For the reasons that follow, we **AFFIRM** the judgment of the district court in full.

**I**

In November 2001, newly-elected Mayor Lambert hired Guzall as an administrative assistant. Guzall joined another administrative assistant, Krampitz, who had served in that capacity under a previous mayor. Guzall's employment was at-will and she served at the pleasure of Mayor Lambert. She was the lowest in command in the office. In 2006, Mayor Lambert promoted Krampitz to chief of staff. Guzall was not promoted to Krampitz's vacated position, and Julie Wojtylko ("Wojtylko") was hired to replace Krampitz.

In 2009, the City began experiencing numerous financial issues and shortfalls tied to the global economy and well-publicized issues with Michigan real estate and the state's financial health.[1] Entering 2010, the City identified a five-year deficit of approximately $20 million. In response, the City created a task force to address the deficit: the Action in Challenging Times Committee ("ACT NOW Task Force"). The task force proposed cost-saving and revenue-enhancing measures.

Between June and August 2010, the City laid off twenty-eight full-time city employees, including policemen, firefighters, and Department of Public Works employees. The City also closed its public library and reduced hours at its Senior Center. No Mayor's office employees

---

[1] On appeal, Guzall takes issue with this fact, asserting that the City was not in financial distress. (Appellant's Br. at 19-20.) However, the evidence supporting financial problems is overwhelming and Guzall's contentions that the City's financial distress was caused by greed and malfeasance are mere conjecture. Indeed, her only citation regarding a lack of financial distress is a statement from her deposition that is untethered to any factual evidence that the City spent more after the millages failed.

were affected during that period. The City then proposed a millage in order to pay for public services. It failed.

In January 2011, each City department was asked to reduce its budget by five percent, including the Mayor's office. The City also planned a special election the following month asking voters to approve a millage to pay for various public services. In the event the millage failed, the City planned to reduce its workforce further. In preparation for that eventuality, the City issued correspondence to twelve employees, including Guzall, stating, in pertinent part, that "due to budget cuts, your position will be eliminated and you will be laid off effective March 11, 2011 at the end of your work day. If the millage vote on February 22, 2011 is favorable, this notice will be rescinded." RE 153-9, PageID #2517. The millage failed and Guzall was laid off. Though Guzall testified that the Mayor's office told her not to clean her desk out because she would be re-hired within three months, and that Mayor Lambert advised her not to look for a job because they would find a way to retain her in some capacity, Guzall's employment never resumed. Nor was her position filled by another employee.

Prior to the layoffs, in 2009, the Michigan State Police ("MSP") began investigating the City's police department following allegations of corruption. In the course of the investigation, allegations of wrongdoing against Mayor Lambert and his office surfaced. In response, the MSP opened a separate investigation into the Mayor's office in April 2010.

In May 2012, more than a year after Guzall was laid off, the MSP interviewed her. The following year, MSP searched Mayor Lambert's home and City Council Chairman Leroy Burcroff ("Burcroff") requested that Mayor Lambert resign. Mayor Lambert did not resign, but declined to seek reelection, and Burcroff was later elected mayor.

In 2013, Guzall filed an amended Complaint, which was unsealed in 2014 when the United States declined to intervene, alleging: (1) retaliation and retaliatory discharge in violation of 31 U.S.C. § 3730(h), public policy, and the First Amendment; (2) violation of the federal False Claims Act ("FCA") in *qui tam* form; (3) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (4) promissory estoppel and fraud; (5) a due process violation; (6) hostile work environment; (7) intentional infliction of emotional distress; and (8) conspiracy.

As the district court summarized, Guzall identified several discussions that she believed informed the decision to lay her off. First, while Guzall was on vacation in May 2010, Wojtylko phoned Guzall regarding interviews of the Mayor's staff in connection with the MSP's investigation into the City's police department. Guzall testified that she told Wojtylko not to lie for anyone and that she would not lie for Mayor Lambert. Guzall stated that when she returned from vacation, she said that she would tell the truth in any interview. Krampitz responded that they were going to give Guzall a pink slip, handed her one, and stated that they would give Guzall a box to pack her belongings if she did not lie. Guzall testified this exchange occurred right before a meeting in which the City was deciding who would be laid off during the initial June 2010 reduction. However, Guzall was not laid off at that time.

Second, Guzall testified that she met with Leroy Burcroff, mayor pro tem and chairman of the City Council, and reported illegal and improper activities in the Mayor's office. Guzall stated that she believed Burcroff told Mayor Lambert about that conversation because Krampitz had warned her that "Burcroff's a politician and he talks." RE 154-4, PageID #2874.

In addition to these claims regarding protected speech and retaliation, Guzall's remaining claims were based on allegations of a vast criminal conspiracy within the Mayor's office, her refusal to either participate in that criminal venture or Defendants' threats against her when she

declined to participate or cover up the illegal activities, and the Mayor's office defrauding the United States government. Guzall also alleged that her job was promised, statutorily guaranteed, and that she was assured she would be rehired.

During the course of litigation, several relevant motions were filed and rulings issued. First, during the initial eighteen months of litigation, Guzall was represented by her husband, attorney Raymond Guzall, III ("Mr. Guzall"). Eventually, Defendants filed a joint motion to disqualify Mr. Guzall, asserting that he acted as an Assistant City Attorney for the City during the relevant period of this action. After a hearing, the district court granted the motion, finding that an attorney-client relationship existed between Mr. Guzall and the City, and that Mr. Guzall acquired confidential information during that relationship. Moreover, the district court found that such information was substantially related to Mr. Guzall's wife's claims and would materially advance her action. Because Mr. Guzall did not have the City's consent, the district court found that Mr. Guzall could no longer represent his wife.

Next, the City filed a motion to compel Guzall to produce the original "unedited surprise audio evidence," i.e., Guzall's conversation with Burcroff that Guzall testified at deposition she had taped, and which Guzall's counsel played, from his own phone, at Burcroff's deposition. RE 70/PageID #1005; RE 74/PageID #1019. The district court allowed forensic review of Guzall's phone, despite Guzall's objections that her husband—and former counsel—owned the phone, thereby implicating attorney-client privilege. When Guzall refused to produce the phone, the district court adopted the Magistrate Judge's Report and Recommendation and fined her $500. In her motion for reconsideration, Guzall stated that she had requested forensic review of Defendants' phones during a May 20, 2016 phone conference, which the district court never ordered.

Finally, the district court's Fourth Amended Scheduling Order set the deadline for dispositive motions at August 11, 2016. On January 5, 2017, Mayor Lambert moved the court to allow him to file a tardy motion for summary judgment, citing the existence of outstanding material issues regarding his deposition and production of tax documents. The district court granted Mayor Lambert's motion on January 11, 2017. Guzall subsequently moved to set aside that order, arguing that she should have been afforded time to respond to the motion under local rules and that Mayor Lambert was not entitled to the relief for various reasons. The district court denied Guzall's motion and considered Mayor Lambert's motion when ruling on the other Defendants' motions.

The district court granted summary judgment to Defendants on all counts, reasoning that: (1) Guzall failed to establish the causation element in her First Amendment claim, offering no probative evidence showing that Krampitz or Mayor Lambert were involved in her dismissal, or that anyone involved in that decision was aware of Guzall's alleged protected speech; (2) Guzall failed to provide evidence of fraud on the federal government with respect to claims for payment, as required by the FCA; (3) Guzall failed to identify an injury to her business or property, as required to sustain a RICO claim; (4) there was no evidence of a clear and definite promise that Guzall would keep her job or that she relied on such promise; (5) no due process claim could be made when it was undisputed that Guzall's position was at-will and that she served at the pleasure of Mayor Lambert; (6) none of Guzall's complaints were related to race, color, religion, sex, or national origin such that a Title VII hostile-work-environment claim could be made and that any First Amendment-based § 1983 claim failed for lack of causation; (7) Guzall failed to identify extreme or outrageous conduct—or any evidence of injury—to support her claim of intentional infliction of emotional distress; (8) Guzall's civil fraud claim failed because she did not establish

any of the requisite elements under Michigan law; and (9) Guzall's conspiracy claim failed because she presented no evidence of fraud and, standing alone, her conspiracy claim is not actionable.

Guzall does not appeal the district court's ruling on her FCA, RICO, or Due Process claims, thus we do not address them. *See In re Anheuser-Busch Beer Labeling Marketing & Sales Practices Litig.*, 644 F. App'x 515, 529 (6th Cir. 2016) ("Where . . . a litigant has failed to clearly raise an argument in the district court, we have concluded that the argument is forfeited."). However, Guzall does appeal the district court's grant of summary judgment as to each of her other claims. She also challenges the disqualification of her attorney, the district court's discovery management, and the sanction the district court levied. Additionally, Guzall has filed a Motion to Correct Error and Supplement and Correct the Complete Record to add Mayor Lambert's deposition testimony—which Guzall intended to attach to her Response to Mayor Lambert's Motion for Summary Judgment—that is not part of the appellate record.

## II

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, primarily due to Guzall's § 1983 claim. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 4.

## III

### A. First Amendment

Guzall's brief appears to make three arguments allegedly demonstrating the district court's error in dealing with her First Amendment claim: (1) improperly excluding as hearsay, or discounting as speculative, testimony that would have precluded summary judgment; (2) failing to consider and address affidavits from Romulus Police Officers Landry, Ladach, and Droege; and (3) failing to apply facts and law in Guzall's favor.

Guzall's first argument—that the district improperly excluded portions of Virginia Williams' affidavit as hearsay—is without merit. We typically review the evidentiary rulings of the district court for abuse of discretion. *General Electric Co. v. Joiner*, 522 U.S. 136, 141 (1997). However, whether the proffered evidence is hearsay under the Federal Rules of Evidence is a question of law that we review de novo. *See Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) (also noting that "[h]earsay evidence may not be considered on summary judgment"). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The statements at issue are Mayor Lambert's allegedly telling Williams that Guzall was "going to be let go because she talks too much" and Krampitz's purportedly telling Williams that Mayor Lambert said "Guzall talks too much and that she had to be let go." RE 175-4, PageID #4485. Both are hearsay. Even though Williams alleges that she personally heard Mayor Lambert state an alternative reason for Guzall's dismissal, Guzall cannot use that statement to prove the truth of the matter asserted—that she was let go because she talks too much. Moreover, statements allegedly made by Krampitz to Williams about what Mayor Lambert said elsewhere add an additional level of hearsay. *See* Fed. R. Evid. 805.

Despite arguing that Williams' affidavit contains no hearsay, Guzall also contends that any hearsay is admissible under Federal Rule of Evidence 801(d)(2)(A) because the relevant statements were made by party opponents. Under that rule, statements are nonhearsay if made by, and offered against, the opposing party. *United States v. Cunningham*, 679 F.3d 355, 383 (6th Cir. 2012) (explaining that the rule permits "a party's own statement to be offered as evidence against that party even where the statement would otherwise be inadmissible as hearsay"). Here, Mayor Lambert and Krampitz are both defendants and thus fall under the broad scope of the rule.

However, for Rule 801(d)(2) to apply, such statements must be made within the scope of employment. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 274-75 (6th Cir. 2003). Statements by employees are outside of the scope of employment, and therefore not subject to the party-admission rule, when they concern decision-making processes into which the employee has no input, or decisions to which the employee was not a party. *Id.* Guzall has not provided any evidence to establish that either Mayor Lambert or Krampitz were involved in the layoff decisions or that they could have influenced those decisions. The only evidence in the record, instead, shows the opposite: that the City Council has final policy-making authority. Nor does Guzall provide evidence that either party had authority to bind the City.[2] Thus, the district court properly excluded the content of Williams' affidavit.

Even were this purported evidence not hearsay, the district court found that Williams' statement that "Guzall was wrongfully fired/laid off" was mere speculation and conjecture. We agree. Williams' statement that Mayor Lambert thought that Guzall "talks too much" does not suggest that Guzall was engaged in protected speech or that any conduct was retaliatory; nor does it in any way implicate either party in the decision to lay off Guzall. Without such connections, the statements were insufficient to preclude summary judgment. *See* Fed. R. Civ. P. 56(e); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992) (discounting "rumors, conclusory allegations and subjective beliefs" in affirming district court's grant of summary judgment).

---

[2] In her Reply, Guzall incorrectly argues that the City waived this argument by failing to raise it below. (Appellant's Reply at 7.) The City raised the hearsay issues in its their Reply in Support of Summary Judgment. Guzall made a cursory argument that "witness statements of employees are not hearsay as per FRE 801(d)(2)(A) and (D)" with no further explanation. RE 175, PageID #4421. The City, however, clearly noted that her hearsay arguments, among other things, failed to implicate the ultimate policy maker. Moreover, Guzall's only argument that Mayor Lambert or Krampitz actually had such authority is based on her own testimony, which itself contains hearsay. (Appellant's Br. at 12 n. 2.)

Guzall's second argument regarding her First Amendment claim—that the district court improperly failed to consider and address the affidavits of former Romulus Police Officers Landry and Droege—is equally without merit. There is no evidence that the district court excluded these affidavits on evidentiary grounds, and we review the court's ruling de novo. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004). The affidavits of former or current police officers make vague and general assertions that the City "retaliates against those people who would not do what [the City] wanted to be done," and that the City "retaliates against those people who report illegal activity occurring in the City," and even reference specific acts of retaliation against individual citizens on Mayor Lambert's behalf. RE 175-1, PageID #4459, RE 175-3, PageID #4483. These statements do not speak whatsoever to the facts at issue in Guzall's case. There are no allegations of similar retaliation against Guzall, or even any mention of her. Though Guzall is correct that the district court did not address these affidavits, the reason is clear: they were unrelated to Guzall's case and wholly unnecessary to its disposition.

Finally, Guzall argues that the district court failed to view the evidence in the light most favorable to her as plaintiff and non-movant.[3] We review such assertions de novo. *See Kouekassazo v. Intellisource*, No. 16-4140, 2017 WL 4513404, at \*2 (6th Cir. Aug. 10, 2017). Guzall fails to cogently indicate which facts and inferences were not viewed in the light most favorable to her. The district court's opinion does not, in any obvious way, draw inferences in favor of Defendants. Instead, Guzall appears to insist once more that irrelevant or improper evidence was ignored. Even were we to consider the speculative and conjectural statements,

---

[3] This assertion is only clear in the table of contents. The internal heading and argument state that the district court "failed to apply *additional* evidence which allowed for Plaintiff's claims." (Appellant's Br. at 8.) This section of Guzall's appellate brief simply reiterates much of her testimony regarding the specific illegal activities that she alleges occurred in the Mayor's office and persists in the attempt to prove her First Amendment claim through speculation and hearsay.

- 10 -

disregarding that they are hearsay, the district court explained in detail Guzall's inability to show causation. A prima facie case of First Amendment-based retaliation requires a showing that the employee "(1) engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [the employee's] protected conduct." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) (citation omitted) (alterations added). Guzall has been unable to show that any person aware of her alleged protected speech—even non-party Mayor Pro Tem Burcroff—effectuated her employment decision, or that their acts gave rise to the ultimate alleged harm. *See King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Moreover, the span of time between the alleged speech and the actual layoffs is too long to conclude that her speech motivated the decision. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (explaining that temporal proximity must be "very close" when used as the sole evidence to show causation). Guzall's actual involvement with the MSP investigation occurred well after her layoff.

Even were these deficiencies not enough to warrant defense summary judgment, there is ample evidence in the record to conclude that, given the City's dire financial straits, the adverse action "would have been the same absent the protected conduct." *See Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (citation omitted). Guzall's position was the most junior in the Mayor's office, and its elimination put the Mayor's office in line with a five-percent budget decrease. Guzall was not replaced and her position remained vacant. Had Defendants wished to fire her due to her reputation for and attestations of truthfulness, they had the opportunity to do so directly after those purported statements in June 2010. Tellingly, Guzall remained on staff for some time and survived the initial workforce reduction. Even more significantly, Guzall was told

she would stay on if the millage passed, and it is uncontroverted that, had the measure passed, she would have stayed on.

In sum, the district court did not err in its analysis of the evidence, the inferences to be drawn from it, or the ultimate conclusion that Guzall cannot establish a First Amendment retaliation claim, with or without any excluded evidence.

**B. Promissory Estoppel and Fraud**

Guzall next claims that, in dismissing her promissory estoppel claim, the district court erred in several ways: (1) by finding no evidence of a promise that she would keep her job; (2) by determining that Guzall could only rely on a promise that she would not be laid off as it related to the first round of work-force reduction; (3) by failing to acknowledge that, even after she was laid off, Defendants promised Guzall that she would be promptly brought back to work; and, (4) when analyzing the alleged promises, by ignoring City code requirements that the Mayor have administrative secretaries. Guzall also appeals judgment on her fraud claim, arguing that the same conduct makes an actionable case of fraud under Michigan law. Our review is de novo. *Combs*, 354 F.3d at 576.

As the district court correctly stated, a promissory estoppel claim under Michigan law requires "'(1) a promise, (2), that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promise, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided.'" *Gason v. Dow Corning Corp.*, 674 F. App'x 551, 558-59 (6th Cir. 2017) (quoting *Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.*, 948 F.2d 271, 275 (6th Cir. 1991)). Michigan precedent emphasizes that the promise must be clear and definite and any subsequent reliance must be reasonable. *DBI Investments, LLC v. Blavin*, 617 F. App'x 374, 385

(6th Cir. 2015) (quoting *State Bank of Standish v. Curry*, 500 N.W.2d 104, 108 (Mich. 1993)). As to Guzall's first three arguments, none of the alleged statements satisfy Michigan's elements of promissory estoppel. Any promise made when she returned from vacation in March 2010 would reasonably be related to the first work-force reduction, and Guzall was not laid off during that time. Though Guzall claims that she could rely on that promise for the second round as well, that assertion does not comport with the law. Such a promise is not clear and definite, and reliance on a promise of employment that could conceivably continue indefinitely is patently unreasonable. As to the alleged promise that she would be rehired within months, that promise, too, was not particularly clear or definite. Indeed, it was unclear in what capacity, with what funds, or through what mechanism Guzall would be brought back into the fold, and the financial situation and termination notice were clear. Moreover, Guzall fails to identify any detrimental reliance on that promise. Instead, Guzall states the opposite—that she did not trust the assurance she was given that she would not be fired. Finally, as to the fact that City Code states that the Mayor's office will have administrative secretaries, that does not constitute a promise that the mayor will have a certain number of administrative secretaries or that one of those secretaries will be Guzall. Even if Defendants used the code as further assurance that she would be brought back, those promises remain amorphous and do not ameliorate Guzall's lack of detrimental reliance.

As to fraud, Michigan law requires similar elements: (1) a material representation, (2) that was knowingly false (or made with reckless disregard as to its truth) at the time, (3) with intention that plaintiff rely on the promise, (4) actual reliance, and (5) causal injury. *See Hord v. Envtl. Research Inst. of Michigan*, 617 N.W.2d 543, 546 (Mich. 2000). In addition to the deficiencies identified in her promissory estoppel claim, Guzall failed to present evidence that any of the alleged statements were knowingly false at the time made, or evidence of any injury based on

detrimental reliance. Accordingly, we find that the district court did not err in dismissing Guzall's promissory estoppel and fraud claims.

## C. Public Policy

Guzall asserts that each Defendant failed to address her public policy claim, waiving any challenge to that claim, and the district court thus "abused its discretion" in dismissing it. Despite Guzall's argument, our review is de novo. *Combs*, 354 F.3d at 576. Under either standard, Guzall's claim fails. First, the district court was skeptical that a separate public policy claim was pleaded at all. But any public policy claim, by Guzall's own admission, was contained in Count I of her Complaint. (Appellant's Br. at 29 (citing RE 4, PageID #132)). As the City noted in its summary judgment motion as well as on appeal, several Defendants addressed Count I extensively. While other briefs addressed the public policy claim together with the FCA and fraud claims, the confusion is understandable, given Guzall's prolix and often convoluted pleading. Moreover, when Guzall asserted in her Response to Motions for Summary Judgment that Defendants had failed to address the public policy claim, the City and Lambert addressed the claim and identified the method by which they met the argument.

Second, the district court did not improperly address Guzall's alleged public policy claim. Instead, it noted via footnote that Guzall's responsive briefs asserted a separate violation of public policy based on retaliatory discharge but found that the claim failed for the same reason as her First Amendment claim—causation. Given that the public policy claim—if it was pleaded—is encompassed in and similar to the First Amendment claim, the district court was not required to expand on its analysis. We affirm the dismissal of this claim.

### D. Hostile Work Environment

Guzall claims that the district court erred in dismissing her hostile- work- environment claim when it erroneously noted that she failed to allege any Title VII-based discrimination. However, the district court did not base its decision solely on that ground. Instead, it noted that it had already addressed her ability to survive summary judgment on her claim that Defendants laid her off in retaliation for her speech under the First Amendment. Only when faced with a confusing pleading, and in an effort to fulsomely address Guzall's claim, did the court explain the deficiencies in any potential Title VII-based § 1983 claim. In any event, Guzall has not attempted to clarify on appeal which protected group she belongs to, or how she was harassed or retaliated against based on membership in such a group. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012). Nor did she participate in any EEOC proceeding. *Reed v. ADM/ARTCO*, 57 F. App'x 682, 683 (6th Cir. 2003) ("A plaintiff must typically file a timely discrimination charge with the EEOC in order to bring a Title VII lawsuit.") (citation omitted). No matter how the district court construed Guzall's hostile-work-environment claim, or how much leniency it granted, Guzall has not established a prima facie case of a hostile-work-environment Title VII claim. *See e.g.*, *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). The district court properly dismissed it.

Guzall also claims that Krampitz failed to address Guzall's hostile-work-environment claim, thus waiving any defense to that claim. Guzall asserts that by dismissing the claim, the district court "abused its discretion." (Appellant's Br. at 30.) Regardless of the appropriate standard of review, this claim fails for the preceding reasons.

### E. Intentional Infliction of Emotional Distress

Guzall also asserts that the district court erred in dismissing her intentional infliction of emotional distress claims. To establish an IIED claim under Michigan law, Guzall must show that Defendants intentionally or recklessly engaged in extreme or outrageous conduct that caused her severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985).

Assuming arguendo that Guzall satisfied the extreme or outrageous conduct prong, Guzall fails to proffer any evidence of emotional distress. The district court noted that "Guzall does not even respond to Defendants' arguments, let alone identify where in the record there is proof of her severe emotional distress." RE 179, PageID #4722. On appeal, Guzall offers the following, alone, as evidence of her emotional distress: that after she allegedly refused to lie, job duties were taken away from her and she asked to be let go when she had nothing to do. These facts do not evidence emotional distress. We affirm the district court's grant of summary judgment as to IIED.

### F. Conspiracy

The district court dismissed Guzall's civil conspiracy claim because it is "not actionable standing alone; it is necessary to prove a separate actionable tort." RE 179, PageID #4724. On appeal, Guzall claims that once this Court reinstates her remaining claims, that will no longer be the case. In affirming the district court in full, we decline to revive any of Guzall's previous claims and her argument as to conspiracy fails.

### G. Disqualification of Attorney

Guzall also appeals the district court's disqualification of her husband as her attorney. We review a district court's decision whether to disqualify an attorney for abuse of discretion. *United States v. Brock*, 501 F.3d 762, 771 (6th Cir. 2007), *abrogated on other grounds*, *Ocasio v. United States*, 136 S. Ct. 1423, 1428–29 (2016). After an evidentiary hearing, the district court issued a

detailed opinion addressing each of Guzall's arguments prior to disqualifying her counsel. In short, it found that a prior attorney-client relationship categorically existed between Mr. Guzall and the City. Mr. Guzall admitted as much. As part of that relationship, he obtained information protected by that privilege related to City wrongdoing. Revealingly, Mr. Guzall freely asserted his attorney-client privilege with the City when questioned by MSP investigators. Given the sprawling complaint and prolific allegations of wrongdoing, it was a near certainty that Mr. Guzall's prior representation of the City would overlap with the facts and theories at issue in Guzall's suit, even if not pertaining to the specific individual Defendants.

On appeal, Guzall cites several cases and propositions that effectively limit the attorney-client privilege in governmental situations due to the public interest inherent in an open and honest government. Guzall also cites to situations in which the content of governmental meetings is not confidential or privileged due to the attendant circumstances. Additionally, Guzall claims that the district court failed to identify any employee who sought legal advice from Mr. Guzall privately, thus negating any claim of privilege. Again, this misstates the district court's reasoning for disqualification. Guzall's cited precedent and propositions have no relation to her husband's disqualification, which was exhaustively explained by the district court. Accordingly, we find that the district court did not abuse its discretion in disqualifying Mr. Guzall.

### H. Case Management

Guzall asserts several deficiencies in the district court's managing of the case during discovery, as well as in the magistrate judge's report and recommendations adopted by the district court. In particular, Guzall asserts that the district court: (1) permitted improper obstruction and delay of Mayor Lambert's deposition; (2) inequitably ordered forensic discovery of her cellular telephone but denied her the same discovery regarding Defendants' electronic devices;

(3) improperly sanctioned Guzall after she failed to produce her phone for forensic review; and

(4) improperly granted Mayor Lambert additional time to file his Motion for Summary Judgment in violation of the scheduling order. We address each issue in turn.

First, while there was undoubtedly delay in obtaining Mayor Lambert's deposition, Guzall admits that his deposition took place. Further, she cites to no precedent standing for the proposition that allowing deposition delays warrants any remedy. Nor can she cite to any court order that Mayor Lambert violated. In sum, it is unclear what remedy Guzall seeks regarding the deposition delay, what she believes she would be entitled to, what law would support such unknown remedies, or what harm was incurred by the delay.

Second, a review of the voluminous record and pleadings regarding the production of Guzall's telephone shows that there was no inequity. At the outset of this litigation, no party was ordered to produce a cellular phone for forensic review. However, after substantial discovery, during Burcroff's deposition, Guzall's counsel unexpectedly played a recording of a telephone conversation between Guzall and Burcroff. Due to its quality as well as the fact that it had not been previously produced, the recording—and in consequence, Guzall's phone itself—became the subject of a fervent discovery dispute. Only in response to Defendants' motion to compel her phone did Guzall seek inspection of Defendants' phones. Even then she failed to file a countering motion to compel or formally explain why review of their phones was necessary—other than because she had been ordered to turn her phone over. Though Guzall was required to produce her phone and Defendants were not, the reason is obvious. No Defendant had attempted to introduce any evidence from a phone that had not been previously produced. Moreover, Guzall does not point to any motion seeking the relief she now claims was an abuse of discretion to deny. Nor does she identify particular prejudice or what discovery or potential discovery she was improperly

denied. In any event, no Defendant cited any evidence from Guzall's phone in their motions for summary judgment, and the evidence obtained is of no moment.

Third, the district court's sanction was not an abuse of discretion. *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009). Guzall failed to respond to Defendants' motion to compel. After the motion was referred to a Magistrate Judge and granted in part, Guzall was to produce her cell phone by September 11, 2015. Guzall failed to comply with the order and her counsel conceded the Magistrate Judge's order was violated. Defendants then moved to dismiss Guzall's entire case. Two months after Guzall was to have produced the phone, the Magistrate Judge held an evidentiary hearing on Defendants' Motion to Dismiss and Guzall produced her telephone. For her violation of the original order, Guzall was fined $500. Such a sanction is not an abuse of discretion. The record shows that Defendants made multiple objections when the unproduced recording was introduced at deposition, made numerous attempts to obtain the recording post-deposition, and timely filed a motion to compel when those attempts failed. The record is also clear that when ordered to produce the phone, Guzall did not do so until another order followed and after Defendants were forced to move to dismiss her case. Though she argues that she did attempt to provide the phone, (Appellant's Br. at 45 (citing RE 79-7, PageID # 1096)), the record below is to the contrary, RE 116. Thus, we find that the district court did not abuse its discretion in sanctioning Guzall.

Fourth, Guzall wholly mischaracterizes the district court's order allowing Mayor Lambert to file a motion for summary judgment after the operative scheduling-order deadline. As the district court explained in its order denying Guzall's motion to set aside its order allowing such a filing, Guzall had previously filed a motion to set aside the court's order extending the dispositive motion deadline. There, Guzall explained the efforts to take Mayor Lambert's deposition and

obtain his tax records and sought other relief. Indeed, Mayor Lambert concedes that discovery disputes related to his deposition and tax-related discovery documents existed. The district court noted that the issues raised in Guzall's motion were irrelevant to the extension of the dispositive motion deadline. Given that outstanding discovery remained, and that Guzall was permitted to depose Mayor Lambert and was granted multiple extensions before responding to his motion, the district court did not abuse its discretion in granting Mayor Lambert additional time to file his motion after the dispositive motion deadline had passed. *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (noting district courts' "inherent authority to manage their dockets"); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (upholding district court's decision to allow summary judgment filing past dispositive motion deadline in scheduling order).

## I. Motion to Correct, Supplement and Correct

Finally, there remains pending Guzall's "Motion to Correct Error and Supplement and Correct the Complete Record," which asserts that in her Response to Mayor Lambert's Motion for Summary Judgment she referred to numerous excerpts from Mayor Lambert's deposition, each time referring to "Exhibit 17," and that this court should supplement the record with that exhibit.

However, Exhibit 17 was not electronically filed. Although Guzall claims that it was included in the U.S. mail version provided to the district court, the district court's order denying Guzall's motion makes clear that it did not receive it. The district court denied Guzall's motion below to send a record to the appellate court including Exhibit 17 because the district court did not rely upon or refer to the unreceived exhibit in its opinion.

Federal Rule of Appellate Procedure 10(e) allows for correction of the record and is meant "to allow the [district] court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals." *Inland Bulk Transfer Co. v. Cummins*

*Engine Co.*, 332 F.3d 1007, 1012 (6th Cir. 2003) (quoting *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 641 (6th Cir. 1982)).  Generally, appellate courts consider the record that was before the district court.  *Id.*  Guzall explicitly seeks to introduce evidence that was not before the district court, which is not permitted by Rule 10(e).  *Id.*  For these reasons, we deny the motion.

## V.  CONCLUSION

For the reasons above, we **DENY** Plaintiff-Appellant Marianne Guzall's "Motion to Correct Error and Supplement and Correct the Complete Record" and **AFFIRM** the district court's opinion in full.

Case No. 17-2056
*United States ex rel. Guzall et al. v. City of Romulus, Mich., et al.*

**HELENE N. WHITE, Circuit Judge,** (concurring in part, dissenting in part). I agree with the majority's disposition except regarding Guzall's First Amendment retaliation claim against Defendant Alan Lambert.[1] I conclude that Guzall presented sufficient evidence of causation, i.e., that her speech was a substantial or motivating factor in Defendants' decision to lay her off, to survive summary judgment. *See Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003).

Public-employee First Amendment retaliation claims are analyzed under a three-step test: Guzall must 1) establish that her speech is protected, that is, touches on a matter of public concern, and demonstrate that her interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer; 2) show that the employer's adverse action would chill an ordinary person in the exercise of her First Amendment rights; and 3) must present sufficient evidence to create a genuine issue as to whether her speech was a substantial or motivating factor in the employer's decision to lay her off. *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003); *see also* PID 4696.

Defendant Lambert challenges only the third element, causation. Lambert Br. 17-19; Krampitz Br. 20-24. The majority concludes that Guzall did not satisfy the causation element because she presented only assumptions, speculation, or hearsay that Lambert was involved in the decision to lay her off. PID 4698-99. I disagree with that determination for several reasons. First, Defendants did not identify the individual decision-makers behind the 2011 layoffs and the evidence they rely on leaves open the possibility that Lambert[2] made or influenced the determination of who in his department would be laid off. City Finance Director Debra Hoffman's affidavit states that a "team of persons representing the various departments" determined which

---

[1] Guzall presented no evidence that the other individual Defendant, Betsey Krampitz, was involved in determining who from the Mayor's office would be laid off in 2011 if the millage did not pass.

[2] Lambert invoked the Fifth Amendment at his deposition.

- 22 -

positions would be eliminated, and that "Guzall's position was collectively agreed upon to be among those selected for elimination because it was determined to be the least critical to operation of the Mayor's office." PID 2442-43.

Second, the affidavit of Virginia Williams, on which Guzall relies, contains party admissions by Defendant Lambert:

> Shortly before [] Guzall's employment was terminated in Romulus, Betsey Krampitz told me that Mayor Lambert told her that [] Guzall talks too much and that she had to be let go, and that [Mayor Pro Tem] Leroy Burcroff was complaining to Mayor Lambert about [] Guzall complaining to Burcroff about things going on in the Mayor's office . . . . Alan Lambert told me prior to the millage increase vote in Romulus that [] Guzall was going to be let go because she talks too much, so I know when Mayor Lambert and the City of Romulus later claimed that they had to lay off [] Guzall because of the millage not passing, that was a false statement and not the real reason they terminated her employment. Alan Lambert told me that [] Guzall was complaining about things that were going on in the Mayors [sic] office and was making those complaints to Leroy Burcroff, and Lambert said those things that [Guzall] was saying were not true. I told him Marianna is loyal and his best employee and that she should not be fired. He told me she had to go. I had all of those conversations with Mayor Lambert at the Romulus Athletic Club . . . .

PID 1803. Lambert's statements to Williams qualify as party admissions under Fed. R. Evid. 801(d)(2)(A), since they are statements offered against an opposing party and were made by the party. As the Mayor, these statements were within his authority.

I note that Lambert's statements to Williams regarding Mayor Pro Tem Burcroff coincide with Guzall's deposition testimony that several months before she was laid off in 2011, she told Burcroff about the illegal conduct in Lambert's office:

> Prior to my layoff, [Burcroff] and I met for lunch . . . I told him everything that was going on, from the campaign finance report, . . . from the allegation that the Mayor was taking money from local businessmen for whatever reasons, like the Park and Fly, things of that nature, the landing strip.
>
> I informed him that they were holding this pink slip over my head because they didn't believe that I hadn't spoken up to the Michigan State Police, and I had told them that I wouldn't lie to the Michigan State Police, and I asked him to help— . . . I said, you know . . . As Mayor Pro Tem, your job is to ask [him] to step down if

he's doing something illegal or allegedly – to help or to intervene on behalf of myself, the other employees and the residents, because they deserve better than what they were getting.

PID 4663/Guzall dep.

Given Defendant Lambert's admissions, I also disagree with the majority that Guzall presented no evidence that any person aware of her alleged protected speech effectuated or influenced the decision to lay her off. Maj. Op. at 12.

For these reasons, I would reverse the district court's grant of summary judgment to Lambert on Guzall's First Amendment retaliation claim.